GILBERT MAINES, Esq. (SBN #48286)
LAW OFFICE OF Gilbert Maines
1320 Crooked Mile Court
Placerville, CA 95667
Ph.: 530-626-3562
Fax: 530-626-3562
E-mail: gem@maineslaw.com

[Proposed] Attorney for Debtor-in-possession Alberto Gonzalez

# UNITED STATES BANKRUPTCY COURT

## IN THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re: ALBERTO GONZALEZ,<br><br>　　　Debtor in Possession | ) CASE NO. 2013-27008<br>) DC NO. GEM-002<br>)<br>) Chp. 11<br>)<br>)<br>) Date: July 2, 2013<br>) Time: 9:32 a.m.<br>) Courtroom: 32<br>) Judge: Hon. Thomas Holman |

## MEMORANDUM OF LAW

1.　There are two senior lien holders on Debtor Alberto Gonzalez's ("Debtor") property located at 12968 Cement Hill Road Nevada City, CA 95959 ("Property").

2.　The claim of American Home Mortgage Assets Trust 2007-2 ("1st Lender" or "first mortgage") is only partially secured based on the value of the collateral against the Debtors' property.

3.　Section 506(a)(1) of the Bankruptcy Code provides that a Chapter 11 debtor may bifurcate a secured lender's claim into an allowed secured claim and an allowed unsecured claim based upon the actual value of the property securing such lender's lien.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the

case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.  **11 U.S.C. § 506(a)(1).**

4. The Supreme Court has recognized that section 506 of the Bankruptcy Code defines the amount of the secured creditor's allowed secured claim and the conditions of his receiving post-petition interest. ***United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.***, 484 U.S. 365, 371 (1988). In ***United Sav. Ass'n of Texas***, the Supreme Court interpreting Section 506(a) of the Bankruptcy Code found that:

> In subsection (a) of this provision the creditor's "interest in property" obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the "value of such creditor's interest" would increase, and the proportions of the claim that are secured and unsecured would alter, as the stay continues-since the value of the entitlement to use the collateral from the date of bankruptcy would rise with the passage of time. No one suggests this was intended. The phrase "value of such creditor's interest" in § 506(a) means "the value of the collateral."  See id. (quoting H.R.Rep. No. 95-595, pp. 181, 356 (1977)).

5. The Ninth Circuit agrees with this interpretation of section 506 of the Bankruptcy Code. ***In re Maldonado***, 46 B.R. 497, 499 (9th Cir. BAP 1984) the Court stated:

> "Under 11 U.S.C. section 506(a), a claim "is a secured claim to the extent of the value of [the] creditor's interests" in the estate's interest in the property. The entire claim is not a secured claim. The claim is secured only to the extent of the value of the secured interest."

6. In addition, Bankruptcy Courts have found that "an 'allowed secured claim' is a determination generally made under 11 U.S.C. § 506." ***In re BBT***, 11 B.R. 224, 229 (Bankr. D. Nev. 1981). The Bankruptcy Court further stated that, with respect to a claim secured by a lien on property of the estate, "to the extent that the value of the property is less than the amount of the total allowed claim, the claim is unsecured." Id.

7. Thus, the amount of the allowed secured claim cannot exceed the market value of the property and the remainder of the claim must be treated as an allowed unsecured claim for purposes of the plan. ***In re Sagewood Manor Associates Ltd. Partnership***, 223 B.R. 756, 773 (Bankr. D. Nev. 1998) (holding that the court may confirm a chapter 11 plan over the objection

of a class of secured claims if the members of that class are to receive under the plan property of a value equal to the allowed amount of their secured claims, as determined under 11 U.S.C. § 506(a)).

8. Accordingly, because the first mortgage on the Property is under-secured, the claim should be bifurcated into secured and unsecured claims based on the debtors' declaration.

9. 11 U.S.C. § 1123(b)(5) provides that a Chapter 11 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." This real property is used by the Debtor for rental purposes, within which Debtor does not occupy any part of the property as a residence. The claim is not secured "only by a security interest in real property that is the debtor's principal residence" as that phrase is now consistently interpreted under case law. See *In re Ramirez*, 62 B.R. 668 (Bankr, S.D.Cal. 1986) and its progeny. See also *In re Adebanjo*, 165 B.R. 98. In *Adebanjo*, the opinion states:

> 11 U.S.C. § 1322(b)(2) [The anti-modification provision] protects claims secured only by a security interest in real property that only is the debtor's principal residence — not "real property that includes or contains the debtor's principal residence" and not "real property on which the debtor resides." *Adebanjo*, 165 B.R. 98 at 104 [emphasis in original].

Thus, pursuant to 11 U.S.C. § 506(a), it is necessary for the Court to determine the value of the real property to determine the allowed secured claim of the deed of trust holder, IBM. *United States v. Taffi* (In re Taffi) 96 F.3d 1190, 1191-1193 (9th Cir. 1996).

10. Debtor does not seek an Order on the validity, priority, or extent of a lien, as these terms are defined in determining the applicability of Fed. R. Bankr. P. 7001. Rather, Debtor brings this motion to value collateral pursuant to Fed. R. Bankr. P. 3012 and 11 U.S.C. § 506(a) and seeks bifurcated valuations for adequate protection determination, as well as budget, projections, and plan preparation. See *In re Pereira* 394 B.R. 501 (Bankr. S.D. Cal. 2008); *In re Dendy* 396 B.R. 171 (Bankr. D. S.C. 2008); *In re Scott* 376 B.R. 285 (Bankr. D. Idaho 2007); *In*

1 | *re Robert*, 313 B.R. 545 (Bankr. N.D.N.Y. 2004); *In re Bennett*, 312 B.R. 843 (Bankr. W.D. Ky. 2004); *In re King*, 290 B.R. 641 (Bankr. C.D. Ill. 2003); *In re Millspaugh*, 302 B.R. 90 (Bankr. D. Idaho 2003); *Dickey v. Ben. Fin.* (In re Dickey), 293 B.R. 360 (Bankr. M.D. Pa. 2003); *In re Hill*, 304 B.R. 800 (Bankr. S.D. Ohio 2003); *In re Sadala*, 294 B.R. 180 (Bankr. M.D. Fla. 2003); *In re Fisher*, 289 B.R. 544 (Bankr. W.D.N.Y. 2003); *In re Hoskins*, 262 B.R. 693 (Bankr. E.D. Mich. 2001); *In re Fuller*, 255 B.R. 300 (Bankr. W.D. Mich. 2000); and *In re Williams*, 166 B.R. 615 (Bankr. E.D. Va. 1994).

11. The value of this property is not consistent with the values often associated with "market value", as defined and described under:

> Regulations published by federal regulatory agencies pursuant to Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989 between July 5, 1990, and August 24, 1990, by the Federal Reserve System (FRS), National Credit Union Administration (NCUA), the Office of Thrift Supervision (OTS), Office of Comptroller of the Currency (OCC) and Federal Deposit Insurance Corporation (FDIC)-12 USC 1818, 1819 (FIRREA) §323.2. This definition is also referenced in regulations jointly published by the OCC, OTS, FRS, and FDIC on June 7, 1994, and in the Interagency Appraisal and Evaluation Guidelines, dated October 27, 1994.

12. Implicit in the above definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

13. Buyer and seller are typically motivated;

14. Both parties are well informed or well advised, and acting in what they consider their own best interests;

15. A reasonable time is allowed for exposure in the open market;

16. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

17. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

18. Debtor's real property is, however, subject to several mitigating factors:

19. Buyer and seller are not present in this matter and no such characteristic is attributable. There would be no allotted time for typical market exposure due to imminent foreclo-

1 sure probability absent the Bankruptcy scheme.

2     20.     The property is subject to undue stimulus from outside sources yet to be identified
3 by debtor in the operative chain of title.

4     21.     Typical "open market valuation" is not possible due to past and imminent litiga-
5 tion associated with third party, un-identified parties making claims that are outside the record
6 chain of title.

7     22.     Property is also subject to high cost of repairs that would be typically addressed in
8 a property inspection on or prior to a sale of the parcel as follows: debtor has inspected and
9 found that the basic structure is in need of repairs. These repairs are functionally necessary in the
10 actual value that would be given by a typical inspection report before any sale of the property
11 could be consummated.

12     23.     Subject property has been continually over-valued for the past seven (7) years by
13 various sources who subsequently offered loan opportunities to debtor using value methods that
14 were inflated to accommodate lenders' needs, and not debtor's. True valuations were not given
15 based on the above definitions of "market value". Debtor is a sophisticated investor in the real
16 estate market and has a working understanding of market conditions and years of experience in
17 the leasing, maintenance and preservation of rental properties.

18     24.     Therefore, pursuant to 11 U.S.C. § 506(a) and applicable law, the Court should
19 value the collateral of American Home Mortgage Assets Trust 2007-2 at $ 57,000.00, for ade-
20 quate protection and plan purposes.  In addition, the Court should determine the current amount
21 of the secured portion of the claim secured by the Property to be $ 57,000.00.

22     25.     Accordingly, the Debtor reserves the right to re-value the property in connection
23 with confirmation of the plan.

24 Dated: May 29, 2013

25
                                                         /s/ Gilbert Maines
26                                                   Gilbert Maines, ESQ.
                                                  [Proposed] Attorney for Debtor-in-
27                                                   possession

28

MEMORANDUM OF POINTS & AUTHORITIES
In re Alberto Gonzalez: Case No. 2013-27008
Page 5 of 5