GILBERT MAINES, Esq. (SBN #48286)
LAW OFFICE OF Gilbert Maines
1320 Crooked Mile Court
Placerville, CA 95667
Ph.: 530-626-3562
Fax: 530-626-3562
E-mail: gem@maineslaw.com

Attorney for Debtor-in-possession Alberto Gonzalez

# IN THE UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>ALBERTO GONZALEZ,<br><br>Debtor-in-possession, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 13-27008-B-11<br>DC NO. GEM-006<br><br>Chp. 11<br><br>Date: October 8, 2013<br>Time: 1:31 P.M.<br>Place: U.S. Bankruptcy Court<br>Robert T. Matsui United States Courthouse<br>501 I Street, Sacramento, CA 95814<br>Courtroom 32, Department B<br>Judge: Hon. Thomas C. Holman |

## DISCLOSURE STATEMENT OF ALBERTO GONZALEZ

## DATED AND FILED SEPTEMBER 23, 2013

# Table of Contents

I.    INTRODUCTION ................................................................................................ 3

II.  DEFINITIONS ................................................................................................... 5

III.  BACKGROUND OF DEBTOR / HISTORY TO BANKRUPTCY FILING ......................... 8

IV. MAJOR EVENTS SUBSEQUENT TO THE FILING OF THE BANKRUPTCY CASE. ..... 9

V.  CREDITORS OF THIS BANKRUPTCY ESTATE .................................................. 10

VI.  PROPERTY OF THIS BANKRUPTCY ESTATE .................................................... 12

VII.  PENDING LITIGATION ................................................................................... 14

VIII.  EXEMPTIONS. ............................................................................................. 14

IX. SUMMARY OF PLAN OF REORGANIZATION. .................................................. 14

X.  LIQUIDATION SUMMARY ............................................................................ 16

     SUMMARY OF LIQUIDATION ANALYSIS: ................................................. 16

     RECOVERIES UNDER THE PLAN VERSUS RECOVERIES IN A LIQUIDATION: .... 18

XI.  MEANS FOR IMPLEMENTATION OF DEBTOR'S PLAN / FEASIBILITY OF PLAN. 20

XII.  POST-CONFIRMATION MANAGEMENT. .......................................................... 23

## I.  INTRODUCTION

This is the first disclosure statement (the "Disclosure Statement") in the individual chapter 11 case of Alberto Gonzalez (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the "Plan of Reorganization of Alberto Gonzalez Dated and Filed August 16, 2013" (the "Plan") filed on September 23, 2013, in accordance with the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").  A full copy of the Plan is attached to this Disclosure Statement as Exhibit 1.  A copy of the ballot form by which holders of impaired claims may vote to accept or reject the Plan is attached to this Disclosure Statement as Exhibit 2.

YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

PURPOSE OF THIS DOCUMENT:

ALBERTO GONZALEZ, Debtor-in-possession, provides this Disclosure Statement in support of Debtor's plan of reorganization under Chapter 11, U.S. Code, pursuant to 11 U.S.C. § 1125 to provide persons and entities entitled to vote to accept or reject Debtor's Plan with information in assistance of evaluation of the merits of the Plan.  A copy of the Plan is attached to this Disclosure Statement as Exhibit 1.  Before the Debtor or any other person, committee, or creditor can solicit your acceptance or rejection of this Plan, the Court must review and approve this Disclosure Statement, after notice and a hearing, as containing adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about this Plan, as provided by 11 U.S.C. § 1125(a)(1).  Should the Court approve this Disclosure Statement, a copy of the Court's Order will be provided to you, along with a ballot and other information to permit you to vote to accept or reject this Plan.  At

that time, you will be directed to complete and forward your ballots to Gilbert Maines, attorney for Debtor, at 1320 Crooked Mile Court Placerville, CA 95667.

This Disclosure Statement describes:

• The Debtor and the significant events during the bankruptcy case;

• How the Plan proposes to treat claims of the type you hold (i.e., what you will receive for your claim if the plan is confirmed);

• Who can vote on or object to the Plan;

• What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan;

• Why the Debtor believes the Plan is feasible, and how the treatment of your claim under the Plan compares to what you would receive on your claim in a liquidation under Chapter 7; and

• The effect of confirmation of the Plan.

As stated above, the Court has not yet confirmed the Plan described in this Disclosure Statement. Only if and when Debtor's Disclosure Statement is approved by the Court with the Court hear the issue of whether or not to confirm Debtor's proposed Plan. If the Court does approve Debtor's Disclosure Statement, very shortly after the time of this approval, Debtors, through their counsel, will provide to you an Order Approving Disclosure Statement, a copy of Debtor's Plan, and a ballot which impaired claim-holders may use to vote to accept or reject Debtor's Plan. The Order Approving Disclosure Statement will include dates, fixed by the Court, which will include the date on or before which all ballots to accept or reject Debtor's Plan are to be submitted to Debtor's counsel, the date on or before which all objections to confirmation of Debtor's Plan are to be filed with the Court and served on Debtor's counsel, and the date and time of the Court's hearing on the confirmation of Debtor's Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself, if and when confirmed, that will establish and control your rights. Please be advised that if the Plan is confirmed, the Plan will be controlling and

determine your rights, even if you did not vote to accept the Plan, and thus it is important you review the Plan as well as this Disclosure Statement thoroughly.

**IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION:**

If you require additional copies of Exhibits and/or "Request for Judicial Notice" or want additional information about the Plan or this Disclosure Statement, you should contact Debtor's counsel Gilbert Maines, 1320 Crooked Mile Court Placerville, CA 95667, (530) 626-3562, **gem@maineslaw.com** .

## II. DEFINITIONS

"**Allowed Claim**" shall mean a Claim (a) in respect of which a proof of claim has been filed with the court within the applicable period of limitation fixed by Bankruptcy Rule 3001; or (b) scheduled in the List of Creditors or Schedules prepared and filed with the court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

"**Allowed Interest**" shall mean an Interest (a) in respect of which a proof of interest has been filed with the court within the applicable period of limitation fixed by Rule 3001; or (b) scheduled in the list of equity security holders prepared and filed with the court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

"**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest, or which is subject to setoff under Section 553 of the Code to the extent of the value (determined in

accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"**Claim**" shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, beneficial, secured or unsecured.

"**Class**" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Articles V and IX hereo, and Article III of the Plan.

"**Code**" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and any amendments thereof.

"**Confirmation Date**" shall mean the date upon which the Order of Confirmation is entered by the court.

"**Court**" shall mean the United States Bankruptcy Court for the Eastern District of California, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

"**Creditor**" shall mean any person or entity that has a claim against the debtor.

"**Debtor**" or "**Debtors**" shall mean Alberto Gonzalez.

"**Effective Date**" shall mean the date upon which the order of Confirmation is no longer subject to appeal or certiorari proceeding, or the date on which no such appeal or certiorari proceeding is then pending, and on which date all of the conditions to the effectiveness of the Plan expressly set forth in the Plan have been fully satisfied or effectively waived.

"**Indebtedness**" as applied to the Debtor shall mean:

(a) all indebtedness or other obligations of the Debtor for borrowed money for the deferred purchase price of property or services.

(b) all indebtedness of the Debtors, contingent, direct or otherwise, secured (or for which the holder of such indebtedness has an existing right contingent or otherwise to be secured) by any mortgage, pledge, lien, security interest or vender's interest under any conditional sale or other title retention agreement existing on any property or asset owned or held by the Debtors, whether or not the indebtedness secured thereby shall have been assumed by the Debtor (hereinafter "Secured Indebtedness"); or

(c) all indebtedness of others, secured or unsecured, directly or indirectly guaranteed, endorsed, or discounted with recourse by the Debtors, or in respect of which the Debtor is otherwise directly or indirectly liable, including without limitation, indebtedness in effect guaranteed by the Debtor through any agreement (contingent or otherwise) to purchase, repurchase or otherwise acquire such indebtedness or any security therefore, or to provide funds for the payment or discharge of such indebtedness or of any other liability of the obligor of such indebtedness (whether in the form of loans, advances, stock purchases, capital contributions or otherwise), or to maintain the solvency or any balance sheet or other financial condition of the obligor of such indebtedness, or to make payment for any products, materials or supplies or for any transportation or services regardless of the non-delivery or non-furnishing thereof.

"**Net Income**" shall have the same definition as is used on Schedule J of the Official Bankruptcy Forms, specifically line 20.c.

"**Order of Confirmation**" shall mean the order entered by the court confirming the Plan in accordance with the provisions of Chapter 11 of the Code which order is no longer subject to appeal or certiorari proceeding or as to which no appeal or certiorari proceeding is pending.

"**Person**" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

"**Petition Date**" shall mean May 23, 2013 the date on which Debtor filed their Chapter 11 petition with the court.

"**Plan**" shall mean this Chapter 11 Plan, as amended in accordance with the terms hereof or modified in accordance with the Code.

"**Rules**" shall mean the Bankruptcy Rules, as amended and supplemented by the Interim Bankruptcy Rules (and local bankruptcy rules) as adopted by the court.

"**Secured Creditor**" shall mean any creditor who holds a claim against the Debtor secured by a lien, security interest or other encumbrance which has been properly attached and perfected as required by law with respect to property of the estate, or who holds a claim that is subject to setoff under Section 553 of the Code to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

Undefined Terms and Section Numbers.  A term used, but not defined, in this Plan, but defined in the Code has the meaning given to that term in the code, unless the context clearly indicates or requires otherwise.  References in the Second Amended Plan Including Amended Disclosure Statement Information to a code section are references to the Code, except as otherwise indicated.

### III.  BACKGROUND OF DEBTOR / HISTORY TO BANKRUPTCY FILING

Debtor presently derives income from the rental of properties. In prior years debtor derived increased income from additional rental properties, while also supplementing income from property development activities, including raw land improvements, home renovation and home building. Debtor began investing in real estate in 1985. Over his lifetime, Debtor has rented, bought, renovated and sold over 20 properties, in California, New Jersey and Texas. In 2008 debtor began to experience an increase in mortgage debt service payments, which the debtor sustained from his personal savings until 2011. In addition, the inverse relationship between property values and related mortgage amount, completely ruined the excellent credit standing debtor had previously enjoyed. While debtor did eliminate many of his property holdings; some at a loss, debtor did end up losing two properties to foreclosure in 2009 and 2011. The increase in debt servicing payments combined with the severely poor economic conditions, specifically the unprecedented contraction of the real estate sector during the past five years, has led to the debtor's inability to meet his debt service requirements.

Debtor has kept up with payments on 81-83 Pearl Street San Francisco, while unable to sustain payments for the 12968 Cement Hill Road Nevada City property. As a result of the forgoing elimination of the Debtors financial resources the debtor seeks Chapter 11 Bankruptcy relief from a reorganization.

## IV. MAJOR EVENTS SUBSEQUENT TO THE FILING OF THE BANKRUPTCY CASE.

Most recently, along with market conditions generally, market conditions for the sale and rental of real property have been improving, and Debtor's income is now much improved. Debtor maintained his rental properties throughout all of this, which he still continues with at present. It is Debtor's recently improved income that has motivated Debtor to seek protection and reorganization under Chapter 11.

Debtor has managed to overcome economic road blocks by directly managing his rental properties and driving higher levels of rental income; freed up and not restricted.

Consequent to these efforts, Debtor has established consistent monthly earnings for two (2) months, as is documented on his most recent monthly operating reports. Through his efforts, during the months subsequent to the Petition Date, Debtor has successfully generated an improvement in both the amount and regularity/dependability of his income, on a monthly basis.

As the overall result of his post-petition efforts, Debtor has achieved at present a current level of revenue and income that is substantially improved and more consistent than the previous stressed levels that caused his to require bankruptcy relief, namely the prior stressed and poor levels of the years 2010, 2011, and 2012.

Subsequent to the Petition Date, Debtor's monthly operating reports reflect the fact that revenues have stabilized and continue to remain so. Debtor has now filed two (2) monthly operating reports, which each, and all taken as a whole, reflect this. Also during the time between the Petition Date and today's date, Debtor has brought two (2) motions to value collateral, which are pending, which pertain to two (2) real properties owned by the Debtor, that had total secured debt encumbrances prior to the Petition Date that clearly exceeded the market value of the collateral as of the Petition Date.

## V. CREDITORS OF THIS BANKRUPTCY ESTATE

On May 23, 2013, Debtor filed Schedules identifying the nature and amount of what he understood to be his prepetition obligations. Since the time of filing the petition, Debtor has incurred no further obligations.

The creditors and interest-holders of this estate, together with their status and the amount of their claims as reflected in any proofs of claim are shown below. On August 12, 2013, the Debtor reviewed the claim register on file with the Court with this Bankruptcy Case. No unscheduled creditors/claimants have filed a claim against the estate. In all instances in which a scheduled creditor has filed a claim, the claim amount given on the filed claim is used; in all other cases the amount scheduled by the Debtor is used. The statements in these lists are made without admission, however, that the Debtor agree or have stipulated to the amount or nature of such claim, or that no objection will be made by this estate.

SECURED CLAIM OF AMERICAN HOME MORTGAGE TRUST 2007-2 (CLASS 1)

| Name of Creditor | Amt of Claim | Type Collateral/Priority |
|---|---|---|
| American Home Mortgage Trust 2007-2 | $ 57,000.00 | 12968 Cement Hill Road |

(1) Amount allowed (this total includes claims modified by Section 506(a) and

Court Order)  …………………………………………………… $   57,000.00

(2) Amount of unscheduled secured claims (this total includes (a) secured

claims filed by unscheduled creditors, and (b) the portion of any

secured claim filed by a scheduled creditor that exceeds the amount

scheduled by the Debtor) ….............................................. $       0.00

(3) Total claims scheduled or filed ….......................................... $ 512,781.00

(4) Total amount ruled unsecured under Section 506(a) …......................($  455,781.00)

(5) Estimated allowable secured claims ….................................... 57,000.00

SECURED CLAIM OF AMERICAN HOME MORTGAGE TRUST 2007-2 (CLASS 2)

| Name of Creditor | Amt of Claim | Type Collateral/Priority |
|---|---|---|
| American Home Mortgage Trust 2007-2 | $ 391,000.00 | 81-83 Pearl Street |

(1) Amount allowed (this total includes claims modified by Section 506(a) and

Court Order)  …………………………………………………..… $ 391,000.00

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ….................................................. $        0.00

(3) Total claims scheduled or filed ................................................................ $ 949,035.00

(4) Total amount ruled unsecured under Section 506(a) …......................…($  558,035.00)

(5) Estimated allowable secured claims …................................................ $ 391,000.00

SECURED CLAIM OF CITY OF SAN FRANCISCO (CLASS 3)

| Name of Creditor | Amt of Claim | Type Collateral/Priority |
|---|---|---|
| City of San Francisco (Property Taxes) | $ 3,791.11 | 81-83 Pearl Street |

(1) Amount allowed (this total includes claims modified by Section 506(a) and

Court Order)  …………………………………………………….. $      3,791.11

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ….................................................. $        0.00

(3) Total claims scheduled or filed ................................................................ $      3,791.11

(4) Total amount ruled unsecured under Section 506(a) …......................…($        0.00)

(5) Estimated allowable secured claims …................................................ $      3,791.11

GENERAL UNSECURED CLAIMS (CLASS 4)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| AHMT 2007-2 | $ 455,781.00 | Unsecured part of 1st lien (12968 Cement) |
| AHMT 2007-2 | $ 558,035.00 | Unsecured part of 1st lien (81-83 Pearl) |
| Anthem Blue Cross | $ 0.00 | General Priority |
| Chevron | $ 0.00 | General Priority |
| Discover Financial S. | $ 0.00 | General Priority |

First City Servicing     $ 0.00              General Priority

Greater CA Financial  $ 32,721.61      General Priority

Palo Alto Medical Fo. $ 0.00             General Priority

PG&E                        $ 242.00          General Priority

Verizon                     $ 200.00          General Priority

SF City Utilities          $ 822.32          General Priority

(1) Amount allowed (this total includes claims modified by Section 506(a) and

Court Order) …………………………………………..$  1,047,801.93

(2) Amount of unscheduled unsecured claims (this total includes (a) unsecured

claims filed by unscheduled creditors, and (b) the portion of any

unsecured claim filed by a scheduled creditor that exceeds the amount

scheduled by the Debtor) …...................................$ (     0.00)

(3) Total claims scheduled or filed .................................$ 33,985.93

(5) Estimated allowable unsecured claims …...................................$ 1,047,801.93

## VI.  PROPERTY OF THIS BANKRUPTCY ESTATE

The Debtor's assets at the time of the commencement of the case, as summarized on Schedules A and B, are herein set forth within the following table:

| No. | Asset | Estimated Value | Basis for Estimated Value | $ not exempt |
|---|---|---|---|---|
| 1 | Cash (DIP accounts) | $   19,458.57 | Cash not exempt ($19,050 is cash collateral) | $     0.00 |
| 2 | Annuity | $     0.00 | Estimated liquidation value | $     0.00 |
| 3 | Automobiles | $   7,000.00 | Debtors BPO | $     0.00 |
| 4 | Books/Art/Collections | $   2,000.00 | Debtors BPO | $     0.00 |
| 5 | Jewelry | $     600.00 | Debtors BPO ($3,000 exempt) | $     0.00 |
| 6 | Other personal property | $   7,300.00 | Estimated liquidation value | $     0.00 |
| 7 | 17091 Old Washington | $   50,000.00 | Debtor BPO | $ 29,075.00 |
| 8 | 12968 Cement Hill | $   57,000.00 | Debtor BPO ($57,000 secured) | $     0.00 |
| 9 | 81-83 Pearl | $   391,000.00 | Debtor BPO ($391,000 secured) | $     0.00 |
| | **TOTALS** | **$   534,358.57** | **Total NOT Exempt** | **$ 29,075.00** |

Item (1) is cash, including petty cash and cash in Debtor's DIP accounts as of July 31, 2013.  Debtor owns no other cash or cash equivalent accounts.  DIP account numbers xxxx4147,

xxxx4139 and xxxx4162 are segregated cash collateral holding accounts; their full balance of $19,050.00 is the cash collateral of secured creditors. $500.00 of cash is exempted on Schedule C.

Item (2) is composed of Debtors annuity interest from Proctor & Gamble as set forth on Schedule B and fully exempted on Schedule C.

Item (3) consists of:

- one automobile; a 2003 BMW X5 (Debtors BPO: $ 5,000.00);
- one 20 foot by 8 foot trailer (Debtors BPO: $ 2,000.00);

Item (4) is paintings and books (Debtors BPO is $ 2,000.00);

Item (5) is two watches (Debtors BPO is $ 600.00);

Item (6) consists of other personal property including household furniture, appliances and electronics valued at $ 5,000.00, clothing valued at $ 1,200.00, a mountain bike valued at $ 500.00, ten (10) contingent and unliquidated claims of varying types (all valued as unknown), office equipment, specifically a computer, desk & printer valued at $ 600.00 (Debtors BPO for other personal property is $ 7,300.00);

Item (7) is the one (1) real property owned in title by Debtor. The full Property address is 17091 Old Washington Road, Nevada City, CA 95959. The listed valuation is by Debtors informed valuation opinion as of the Petition Date, as indicated in the above table. This property is owed by Debtor free and clear of any liens or encumbrances, as set forth in the above table.

Item (8) is the one (1) real property owned in title by Debtor. The full Property address is 12968 Cement Hill Road, Nevada City, CA 95959. The listed valuation is by Debtors informed valuation opinion as of the Petition Date, as indicated in the above table. The property is secured, as set forth in the above table.

Item (9) is the one (1) real property owned in title by Debtor. The full Property address is 81-83 Pearl Way Calistoga, CA 94515. The listed valuation is by Debtors informed valuation opinion as of the Petition Date, as indicated in the above table. The property is secured, as set forth in the above table.

## VII.  PENDING LITIGATION

Debtor was involved in credit card litigation in San Francisco Superior Court (GCFS Inc v. Alberto Gonzalez, case # CGC12520049).  This case was stayed once the above captioned bankruptcy was filed.  Debtor listed GCFS (Greater California Financial Services) on Schedule F as a disputed claim for $ 33,944.00.  GCFS filed Proof of Claim 2-1 for $ 32,721.61 in the above captioned bankruptcy case on June 13, 2013.  Debtor is involved in no other litigation.

## VIII.  EXEMPTIONS.

Debtor has claimed and scheduled the property of this estate exempt, except where not set forth as exempt on Schedule C and furthermore reported as not exempted herein under Roman Numeral VI above.  All personal property is exempted, as is set forth in the table under the heading of Roman Numeral VI above with only a few minor exceptions.  Specifically, the only instance of property that is not exempt is a $ 29,075.00 portion of Debtors real property commonly described as 17091 Old Washington Road, Nevada City, CA 95959.  All other property of this estate is exempted.

Going further, Debtor claims that all property of the estate is exempt by operation of law, specifically under 11 U.S.C. § 1129, because each holder of an impaired claim or interest will receive or retain under the Plan an amount, in cash, that is not less (in fact substantially greater) than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

There is no pending litigation over the nature or amount, or of the exempt/nonexempt status of any property of this estate other than that described under section VII titled Pending Litigation.

## IX. SUMMARY OF PLAN OF REORGANIZATION.

Under the Debtor's Plan, Alberto Gonzalez will continue at his property rental business.

This Chapter 11 reorganization contains a total of all claims of approximately $ 1,500,092.93, with three (3) secured claims, and eleven (11) general unsecured claims.  The plan provides for full payment of the allowed amount of the secured claims.  The secured claim (Class

1, to American Home Mortgage Trust 2007-2, secured by 12968 Cement Hill Rd Nevada City, CA 95959; Class 2, to American Home Mortgage Trust 2007-2, secured by 81-83 Pearl Street San Francisco, CA 94103; Class 3 to the City of San Francisco, secured by 81-83 Pearl Street San Francisco, CA 94103; with Class 1 and 2 to be paid over the course of 360 monthly installments at four percent (3.00%) interest, and finally Class 3 to be paid over the course of 48 monthly installments at four percent (4.00%) interest. The plan provides for the general unsecured claims (class 4) a yield of 5.7%, to be paid over the course of 120 monthly installments at no (0%) interest. Finally, the plan provides a class (class 5) for Debtor's interest in the property of this bankruptcy estate, which entirely revests in the Debtor upon confirmation, and thus this class is unimpaired.

The Internal Revenue Service filed a Proof of Claim for a priority unsecured debt which will be paid within 60 days of the date of confirmation of Debtors plan. Debtor's Plan has no other pre-petition tax debt. The plan provides that any administrative claims shall be paid in full, upon Court review and Court Order.

The Debtor's Plan classifies claims into various classes and provides for payment or treatment of each class in installments paid over time (or, for Section 507(a)(2) administrative claims, if any, upon Court Order). Although the Debtor's Plan is summarized below, Creditors should review the Plan to determine the specific classification and treatment of their claim(s). The summary follows.

a. Unimpaired Class

Debtor has no unimpaired classes.

A class of claims or interests is unimpaired if, in general, the Debtor's Plan leaves unaltered the legal, equitable, and contractual rights to which the claim or interest entitles the holder of such claim or interest, except that the Debtor's Plan may, under certain circumstances, prohibit the exercise of any right to pursue co-Debtor or accelerate the payments due on account of any Claim.

b. Impaired Classes

The following classes are impaired under the Debtor's Plan.  The paragraph number set forth next to the class indicates the paragraph of the Debtor's Plan that sets forth the specific treatment of the class.

Class 1 (Secured Claim of American Home Mortgage Trust 2007-2) (¶ 3.1)

Class 2 (Secured Claim of American Home Mortgage Trust 2007-2) (¶ 3.2)

Class 3 (Secured Claim of the City of San Francisco) (¶ 3.3)

Class 4 (General Unsecured Claims) (¶ 3.4)

Each holder of a claim or claims in impaired classes should refer to the Debtor's Plan, and in particular, to the pertinent paragraph(s) of the Debtor's Plan set forth above, to determine the exact treatment of such claim under the Debtor's Plan.

## X.  LIQUIDATION SUMMARY

In the event that the Debtor's Plan, as it may be amended from time to time, is not accepted by the requisite vote, or is not confirmed by Order of this court, and no further amendments are possible or are permitted by court order, one alternative would be to convert this matter to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.  In that event, a trustee would be appointed with authority to liquidate all nonexempt property of this estate, to the extent of any existing equity.  The trustee's fee, the fees of any professional persons employed to assist the trustee, and any costs of liquidation, including storage, maintenance, preparation, and sale would be deducted from the proceeds of such liquidation.  All creditors holding perfected, unavoidable liens would be entitled to receive either their collateral or the value of such property.  All priority claims would be entitled to receive payment from the remaining balance of any proceeds, and if any monies remained, a distribution would then be made to unsecured creditors.

SUMMARY OF LIQUIDATION ANALYSIS:

Section 1129(a)(7) of the Bankruptcy Code provides that each holder of an impaired claim or interest (i) has accepted the Plan of Reorganization ("Plan"); or (ii) will receive or retain under the Plan, on account of such claim or interest, property of a value, as of the Effective Date

1   of the Plan, that is not less than the amount that such holder would so receive or retain if the

2   Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

3           This Liquidation Analysis indicates the values that may be obtained by Classes of Claims

4   and Interests upon the disposition of assets pursuant to a Chapter 7 liquidation, as an alternative

5   to continued operation of the business and payments under the Plan.  Accordingly, collateral

6   (property of the estate) values discussed herein may be different from amounts referred to

7   in the Plan.

8           The Liquidation Analysis is based upon estimates and assumptions, which although

9   rationally based and considered reasonable by Debtors, are inherently subject to significant

10  economic and competitive uncertainties and contingencies beyond the control of the Debtor.

11  Accordingly, there can be no assurances that the values reflected in this Liquidation Analysis

12  would be realized if the Debtor were, in fact, to undergo such a liquidation.  In addition to the

13  assumptions that are set forth herein, there are significant areas of uncertainty that exist with

14  respect to the liquidation process and hence this Liquidation Analysis, with the assumption

15  regarding the liquidation process as follows:

16          (1) The Liquidation Analysis assumes that the liquidation of the Debtor's estate would

17  commence on or about October 1, 2013 (most recent available data) and be substantially

18  completed within a 90-day period.  Upon such a liquidation, the Debtor assumes, with a high

19  degree of certainty, that Debtor businesses (property rental business) of all Debtor's current and

20  ongoing areas of business would want to immediately terminate their agreements and seek

21  similar services/rentals elsewhere, and moreover, the Debtor would need to halt their business

22  operations in order to liquidate, which would require the Debtor wind-up their business affairs.

23  Thus the Debtor would halt their services, although certainly in a cooperative fashion with their

24  current principals, and do so in a relatively short amount of time, most likely within

25  approximately 30 days.

26          (2) During the 90-day period, all management operations at the property rental business

27  would be wound down.  No substantive phase-out of employment positions would be required,

28

because all operations are being performed by the Debtor.  The Debtor would remain involved and engaged as necessary to support the completion of an orderly liquidation.

(3) After wind-up of operations, the assets of the estate would be liquidated in an orderly fashion.  An orderly liquidation of all assets would include activities such as the sale of various assets to a purchaser of such assets, and the completion of the claims reconciliation process.

(4) The wind down costs during the 90-day period have been estimated by the Debtor, with the only two substantial costs foreseen to be (i) the cost of the sale of real properties in which equity exists to be realized, and (ii) the Chapter 7 Trustee fee.  While each of these are set and unavoidable, each may be estimated to a relatively high degree of accuracy and neither is in any direct way dependent upon time, and thus no substantial deviation from the following estimate that would flow consequentially from a deviation from the  90-days time requirement estimate is foreseeable.

(5) In any liquidation there is a general risk of unanticipated events that could have a significant impact on the projected cash receipts and disbursements.  These events include unforeseen near-term changes in general economic conditions and changes in the market value of the Debtor's assets.

(6) Although entirely unanticipated by the Debtor as being pertinent, the issues of potential recoveries from avoidance actions and final bankruptcy claims reconciliation have not been addressed in the Liquidation Analysis.

RECOVERIES UNDER THE PLAN VERSUS RECOVERIES IN A LIQUIDATION:

The following table sets forth an estimated distribution of $ 24,917.50 in net proceeds from the Debtor in a hypothetical Chapter 7 liquidation of the Debtors, commencing October 1, 2013.  The estimated value of the assets were obtained as described in the Notes that follow the table.  Values may vary significantly due to a variety of factors, with the identifiable significant risk here including increased inventory of aged accounts receivable, due to the recent increase in financially distressed companies and individuals, and the generally poor economic conditions at present.

| Asset | Estimated Value | Estimate on Liquidation | Est. Liq. % | Note # |
|-------|-----------------|-------------------------|-------------|--------|
| Cash | $ 0.00 | $ 0.00 | 0% | 1 |
| 17091 Old Wash. Rd. | $ 50,000.00 | $ 29,075.00 | 58.15% | 2 |

GROSS LIQUIDATION PROCEEDS: $ 29,075.00

Less Estimated Costs Associated with Asset Liquidation:

| | | |
|---|---|---|
| Administrative Costs | ( 500.00) | 3 |
| Chapter 7 Trustee Fee (25.0% of gross) | ( 3,657.50) | 4 |
| Total Estimated Costs of Asset Liquidation: | $ ( 4,157.50) | |

EST. NET LIQUIDATION PROCEEDS:    $  24,917.50

The following table sets forth the comparative recovery by the creditors of this estate, as under the Plan as compared with in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.

| Claim Holder | Total Claim | Est. Liq. Recovery | Est. Liq. % | Plan % | Note # |
|--------------|-------------|--------------------|-------------|--------|--------|
| Internal Revenue Svc | $ 500.00 | $ 500.00 | 100.00% | 100% | 5 |
| PG&E | $ 242.00 | $ 5.64 | 2.33% | 5.7% | 5 |
| Verizon | $ 200.00 | $ 4.66 | 2.33% | 5.7% | 5 |
| City of SF Utilities | $ 822.32 | $ 19.16 | 2.33% | 5.7% | 5 |
| Greater CA Fin'l Svcs | $ 32,721.61 | $ 762.53 | 2.33% | 5.7% | 5 |
| AHMT 2007-2 (NC) | $ 455,781.00 | $ 10,621.32 | 2.33% | 5.7% | 5 |
| AHMT 2007-2 (SF) | $ 558,035.00 | $ 13,004.20 | 2.33% | 5.7% | 5 |

As reflected on the comparative table immediately above, the Debtor believes that under the Plan, each holder of an Impaired Claim or Interest will receive or retain, on account of such Claim or Interest, property of a value that is not less than the value such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  The general unsecured creditors will receive, under the Plan, property of a value that is substantially more than the value such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  Accordingly, the Debtor believe the Plan satisfies the requirements of the best interests

test set forth in Section 1129(a)(7) of the Bankruptcy Code. The following notes describe the significant assumptions reflected in the Liquidation Analysis. The values of assets used in this Liquidation Analysis are estimated values as of July 1, 2013.

Note 1 – This is the most recent reconciled cash on hand amount available, reconciled as of July 31, 2013 and reported on Debtor's August 14, 2013 monthly operating report, less the amount that is the collateral of Secured Creditor American Home Mortgage Trust 2007-2, less the amount of cash exempted (i.e. the amount of current available cash on hand that is not cash collateral and that is not exempted by Debtors).

Note 2 – This is the $ 50,000.00 value of Debtors real property (17091 Old Washington Road, Nevada City, CA) minus the amount exempted by Debtor ($ 20,925.00) leaving $ 29,075.00 available to creditors.

Note 3 – $ 500.00 is estimated in general miscellaneous administrative expenses.

Note 4 – The Chapter 7 Trustee would be entitled to up to 25% of the first $5,000 liquidated, plus 10% of the remainder (up to $50,000). For estimate purposes, Debtor estimates the trustee would be awarded $ 3,657.50 based on the gross liquidation proceeds.

Note 5 – All other unsecured claims against this estate are entirely general (non-priority) unsecured claims. Under the Plan, 5.7% of each of these claims would be paid. Under the Liquidation Analysis, because of the near nominal value of all estate assets that would remain after payment of the unsecured priority claim, each of these claims would receive only a 2.33% yield.

## XI.  MEANS FOR IMPLEMENTATION OF DEBTOR'S PLAN / FEASIBILITY OF PLAN

The Debtor intends to implement their Plan by continuing his operation of the rental income properties (12968 Cement Hill Rd Nevada City, CA and 81-83 Pearl Way San Francisco, CA). The Debtor has prepared *pro forma* projections showing his projected revenue and available monthly cash flow (monthly net profit), from which it will fund his Plan, covering the time-period of the present through December 31, 2018. These pro forma projections are attached as Exhibit 3. These projections are based strictly upon the Debtor's actual and most-recent

accounted and reported results, namely the most-recent 3 months (June 1, 2013 – August 31, 2013) of the Debtor's post-petition history, which have been reported via monthly operating reports. No assumptions are made that lack a material basis and foundation that Debtor in fact actualized during the post-petition period, and consequently the Plan is based upon a very cautious and conservative forward projection based on only Debtor's actual recent performance within the current challenging and difficult economic and market conditions. As such the Debtor considers the Plan certainly feasible, because the Debtor will be able to fully fund and perform the Plan from his ongoing operations, even if the current stressed environment and Debtor's now-established current actual performance therein continue forward, without any improvement in either (Debtor's performance, or the economy generally), throughout the duration of the Plan.

To address feasibility, Debtor employs the tables and methodology generally suggested by the Office of the United States Trustee. This approach utilizes a summary table of required plan payments less payments already being made by Debtor post-petition, compared with Debtor's average net profits as documented in their monthly operating reports on file. This approach demonstrates the plan to be feasible, as follows:

| Class | Creditor(s) | Claim | Monthly Plan Payments |
|---|---|---|---|
| 1 | AHMT 2007-2 (NC) | $ 57,000 | $ 240.31 (+ escrowed insurance and taxes) |
| 2 | AHMT 2007-2 (SF) | $ 391,000 | $ 1,648.47 (+ escrowed insurance and taxes) |
| 3 | City of SF Prop Tax | $ 3,791 | $ 85.60 (48 monthly payments) |
| 4 | [general unsecured] | $1,047,802 | $ 497.71 (5.7% yield paid over 120 months) |

Total Monthly Plan Payments: $ 2,472.09

OTHER/LIVING EXPENSES:

| Expense | Monthly Amount |
|---|---|
| Living expenses | $2,000.00 (monthly average per MORs on file) |
| Tax and ins. escrow on Cement Hill Prop. | $ 172.25 (est. $52.25 tax + $120 hazard ins.) |
| Tax and ins. escrow on Pearl St Prop. | $ 491.81 (est. $381.81 tax + $110 hazard ins.) |
| Water, Sewer and Waste | $ 150.00 |

Reserve fund for rental properties       $ 500.00

US Trustee fees       $ 216.67 (estimated $650 per quarter)

Total Other/Living Expenses:       $ 3,530.73

        TOTAL MONTHLY OUTLAYS:       $ 6,002.82

**Monthly Operating Report**       **Income**

June 2013       $ 6,350[1]

July 2013       $ 6,350

        TOTAL:       $ 12,700 divided by 2 months= **$6,350 average**.

Of note, August 2013 is not included.  August 2013 figures are not fully known at present, and the August 2013 MOR is neither prepared nor filed at present.  Continuing with the analysis suggested by the US Trustee:

      Monthly payments required per plan       $ 2,472.09

      Monthly expenses       $ 3,530.73

Monthly Amount Required via Ongoing Profit/Revenue       $ 6,002.82

Monthly disposable income       $ 347.18

      The monthly amount so required is covered by average profits.  Thus, the plan is demonstrably feasible.

      The projected revenue going forward is based upon the most recent two (2) months revenue received by Debtor from his rental property activities.  These revenues are reflected on Debtor's two (2) most recent monthly operating reports filed with the Court, for the same two months (attached collectively as Exhibit 4).

      Projected costs going forward are based upon current total costs of Debtor.  Business and personal expenses are projected in this manner.  Projected costs are the actual monthly expenses, where they are fixed and known, and where variable estimated as the average of known February 2013 through June 2013 monthly actual figures.

---

[1] $900 in rents were received early PRIOR to the filing of the petition.  While the monthly operating report for June 2013 does not include this amount, it was received prior to the reporting period and will be considered as received in June 2013.

In summary, based on their most recent actual performance and history, the Debtor earns enough revenue, consistently on a monthly basis, which translates to enough after-tax net profit, that their total Plan debt repayment commitment $6,002.82 is to be approximately 94.53% of their after-tax net revenue [not including one-time administrative costs, $6,348.75 + 500.00 = $6,848.75]. The 5.47% cushion (equating to $ 347.18 per month), when combined with the Debtors reserve fund, allows for the inevitable month-to-month variance and unanticipated one-time expenses that cannot be predicted. Additionally, Debtor plans to close the bankruptcy after plan confirmation, saving an additional $650.00 per quarter ($216.67 per month) in trustee fees. The net amount when calculating these figures ($347.18 per month plus $500.00 per month (reserve fund) plus 216.67 per month) is $1,063.85, which is a 16.75% cushion. Most importantly, because the revenues and cash flows themselves are based upon a historical and material basis, none of the revenue assumptions are speculative, hypothetical, or otherwise contingent on unsubstantiated assumptions, and thus judged by present-day actual-fact material conditions, the Plan is feasible. This 94.53% percentage is projected to vary somewhat over the years, decreasing somewhat in 2014 to approximately 91.12% (when the bankruptcy case is closed to save US Trustee fees), and in 2017 to approximately 89.77% (upon completion of the payment of the City of San Francisco secured claim [$85.60 per month].

Even though the *pro forma* projections are formulated very cautiously and conservatively, without any assumptions of future results not historically realized in the postpetition time-period and without any trend-extrapolation of recent (postpetition) actual performance and results, the future performance of the Debtor may either over perform or under perform these projections. The Debtor's performance will depend upon their continued revenue from his business activities at the same rate as he has received it over the past two (2) months. Creditors should review the attached projections (Exhibit 3) and supporting documents carefully to reach their own decision regarding whether or not to vote for the Debtor's Plan.

## XII.  POST-CONFIRMATION MANAGEMENT.

Debtor will continue to self-manage all of his business activities directly. As such no

disclosure regarding compensation to any corporate "insider" pursuant to Section 1129(a) of the Code is required.

Dated: September 23, 2013

Respectfully submitted,

By: ___/s/ Alberto Gonzalez_____

Alberto Gonzalez,
Debtor-in-possession


Gilbert Maines_____
Gilbert Maines (SBN 226743),
Attorney for Debtor